IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SALLY CONDRON UNDERWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 04-1162-CV-W-GAF |
| | ) | |
| HARTFORD LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendant Hartford Life and Accident Insurance Company ("Defendant"). (Doc. #25). The Plaintiff, Sally Condron Underwood ("Plaintiff"), filed this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., seeking judicial review of Defendant's denial of her claim for long term disability ("LTD") benefits under an employee benefit plan. (Doc. #13). Defendant argues that it is entitled to Summary Judgment on Plaintiff's ERISA claim because the medical evidence did not support a loss of functionality sufficient to render Plaintiff totally disabled as defined by the policy, and Defendant's decision to deny Plaintiff's claim was supported by substantial evidence in the record. (Doc. #26).

Plaintiff argues that Summary Judgment is not appropriate in this case. (Doc. #27). In support of her argument, Plaintiff alleges that, as required under the policy issued by Defendant, she applied for and received Social Security Benefits. Id. Plaintiff claims that, although the definition of disability under the

1

Social Security regulations is stricter than the definition under Defendant's policy, Defendant incorrectly determined that Plaintiff did not meet the definition of disability under its policy. Id. Plaintiff further claims that after Defendant repeatedly invited Plaintiff to file additional documentation of her alleged disability, Defendant ignored the testimony of Plaintiff's neurosurgeon, Dr. Wilkerson. Id. For reasons set forth more completely below, Defendant's Motion for Summary Judgment is GRANTED.

## DISCUSSION

**I.     Facts**

This case arises out of a group LTD policy ("the Policy") the Defendant issued to Tyco International, Inc. ("Tyco") to fund the Tyco Employee Benefit Plan, which provides LTD benefits to qualified, eligible participants.[1] For purposes of LTD benefits, the Policy defines "total disability" or "totally disabled" as follows:

> Total Disability or Totally Disabled means that:
> 1) during the Elimination period[2]; and
> 2) for the next 24 months, you are prevented by:
>     (a) accidental bodily injury;
>     (b) sickness;
>     (c) mental illness
>     (d) substance abuse; or

---

[1] Unless otherwise noted, these facts are derived from Defendant's Statement of Uncontroverted Material Facts. (Doc. #26). Plaintiff does not dispute any of the statements of uncontroverted material facts appearing in Defendant's Suggestions in Support of Defendant's Motion for Summary Judgment. (Doc. #27).

[2] The Elimination Period is defined as being:
[T]he period of time you must be Disabled before benefits become payable. It is the last to be satisfied of the following:
> (1) the first 180 consecutive days of any one period of Disability; or
> (2) with the exception of benefits required by state law, the expiration of any Employer sponsored short term disability benefits or salary continuation program.

> > (e) pregnancy,
>
> from performing the essential duties of your occupation, and as a result you are earning less than 20% of your Pre-Disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us.

The policy expressly and unambiguously grants discretion to Defendant to determine eligibility for benefits, stating:

> **Who interprets policy terms and conditions?**
>
> The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

Plaintiff began working 20-24 hours per week for Tyco on May 5, 1999 as a part-time Customer Service Specialist, with the physical requirements of the position being continual sitting and keyboarding. Plaintiff became a participant in the Tyco Employee Benefit Plan on June 4, 1999. From December 17, 1999 through April 21, 2000, Plaintiff applied for and received short term disability payments. Her application was supported by an Attending Physician's Report completed by Michael Shinn, M.D., a family practitioner, that reflected that Shinn had first seen Plaintiff on January 11, 2000 for complaints of "occasional muscle weakness."

On or about May 2, 2000, Plaintiff applied for LTD benefits, claiming that she became disabled and unable to work as of December 17, 1999, due to "severe muscle pain & weakness, migraines." Her application for LTD benefits included an Attending Physician's Statement of Disability, in which Dr. Shinn indicated a possible diagnosis of "? Fibromyalgia." As part of its review of Plaintiff's claim for LTD benefits, Defendant gathered medical records from Dr. Shinn and from all other health care practitioners whom Plaintiff had identified in her application for LTD benefits. On or about July 7, 2000, Defendant informed Plaintiff that she did not meet the Policy definition of "Total Disability" in that none of her treating

3

Case 4:04-cv-01162-GAF   Document 29   Filed 11/02/05   Page 3 of 16

doctors had established that she was physically limited from performing her own sedentary occupation on a 24-hour work week schedule. In its July 7, 2000 letter advising Plaintiff that her claim for LTD benefits had been initially denied, Defendant's claim examiner referenced the following information contained within Plaintiff's medical records:

(a) <u>November 10, 1999</u>: Terry L. Calhoun, M.D., a family practitioner, wrote: "[Plaintiff] states that in a general way she just does not feel well and wants me to give her a statement to be off work for an indefinite period of time."

Dr. Calhoun gave Plaintiff a note to be out of work for three weeks.

(b) <u>November 30, 1999</u>: James S. Applebaum, M.D., conducted a neurological examination of Plaintiff and found her "thyroid tests are negative." Dr. Applebaum found "no evidence of any peripheral neuropathy...[and] no evidence of any neuromuscular junction problem or primary myopathy as [Plaintiff's] strength is completely normal."

(c) <u>December 21, 1999</u>: Plaintiff returned to Dr. Calhoun, who wrote: "[Plaintiff] is requesting a statement to be off work due to muscle weakness. She reports diffuse muscle weakness. She is in the process of evaluation by Dr. Applebaum, Neurology. I have a letter from him dated 11/30/99. She had a normal MRI of the brain done 11/30/99."

Dr. Calhoun provided Plaintiff with a "note to be off work for an indefinite period of time." This was the last date Plaintiff was seen by Dr. Calhoun.

(d) <u>December 28, 1999</u>: Plaintiff again saw Dr. Applebaum, who noted: "[Plaintiff's] lumbar puncture was normal. In particular, cytology, cell count, glucose, protein, oligoclonal bands, and Gram's stain were negative...Lyme disease, CPK, rheumatoid factor, antinuclear antibody, and sedimentation rate

4

were all normal."

Dr. Applebaum suggested a diagnosis of Fibromyalgia or Chronic Fatigue Syndrome. He offered a prescription for Effexor.

(e) January 11, 2000: Plaintiff saw Michael Shinn, M.D., a family practitioner, for the first time, complaining of muscle weakness since December 17, 1999.

(f) February 22, 2000: Dr. Shinn referred Plaintiff to neurologist Arthur Allen II, M.D., for an electrodiagnostic study. The EMG was essentially normal, with no presence of "peripheral, plexal, or root level pathology to explain [Plaintiff's] symptoms."

(g) March 13, 2000: Plaintiff saw board-certified neurosurgeon Robert M. Beatty, M.D., F.A.C.S., who reported that Plaintiff's "neurologic examination remains intact with good reflexes and good muscle tone and strength." Dr. Beatty ordered a repeat MRI of Plaintiff's lumbar and cervical spine, provided a prescription for Vioxx, and ordered physical therapy. On March 21, 2000, Dr. Beatty reported that the MRI studies of the cervical and lumbar spine each "look fairly good."

(h) March 15, 2000: Plaintiff was evaluated by S.R. Reddy Katta, M.D., specializing in physical medicine and rehabilitation and electrodiagnostic medicine. Dr. Katta noted that Plaintiff's physical exam established a "moderate degree of upper thoracic and lumbar paraspinal muscle spasm. Straight leg raising test is negative bilaterally. No pain was noted on range of motion of her neck itself." Plaintiff had "5/5 grade muscle strength in both the upper and lower extremity muscle groups." She was able to walk on tiptoes, walk on heels and could squat. Plaintiff was instructed in a home exercise program, stretching, and proper body mechanics. She was advised to avoid strenuous activity but to start on a regular walking or swimming program.

5

(i) <u>April 11, 2000</u>: Plaintiff saw Dr. Shinn, who wrote in his notes, "Just doesn't feel well at all. Isn't really taking much for this. She wants to continue to be off work. Talked to her at length about this. I really think she needs to consider something more permanent, as I don't feel comfortable writing these notes for her when she doesn't seem to be doing anything for her problem. She just states everything hurts, very weak and tender."

(j) <u>May 3, 2000</u>: Plaintiff saw Dr. Shinn again, who stated, "Basically needed notes for work release. Is trying to apply for long-term disability. Her exam is basically unchanged from before."

Defendant's initial denial letter informed Plaintiff that she could provide any additional information that would assist Defendant in evaluating her claim for LTD benefits within 60 days, specifically advising Plaintiff that "[i]n particular, clinical evidence to support that you are limited from performing sedentary work on a 24-hour workweek schedule may assist us in further evaluating your claim." Defendant's July 7, 2000 letter further advised Plaintiff of her right to administratively appeal its initial denial of LTD benefits.

On or about July 14, 2000, Plaintiff submitted to Defendant her Notice of Appeal, together with reports of the MRI studies of her cervical spine and lumbar spine conducted on March 20, 2000, an X-ray report of her hip and pelvis dated June 29, 2000, and medical literature outlining symptoms and treatment of spinal stenosis, sacroilitis and fibrositis. On or about August 24, 2000, Plaintiff faxed to Defendant a copy of a Notice of Award of Social Security Benefits, but provided no ancillary documentation as to the Social Security Administration's ("SSA") basis for its award of disability benefits[3].

---

[3]The Policy required Plaintiff to apply for Social Security disability benefits. (Doc. #27). The Policy itself did not require Plaintiff to submit any ancillary documentation regarding the SSA's basis for its award of disability benefits. <u>Id</u>. However, the Defendant invited Plaintiff to provide any documentation which would assist the Defendant in evaluating the Plaintiff's claim.

6

By a letter dated September 7, 2000, Defendant upheld its initial denial of Plaintiff's claim for LTD benefits. In its letter upholding its denial of LTD benefits, Defendant acknowledged review of the materials submitted with Plaintiff's Notice of Appeal. Defendant's claims examiner then explained:

> 1. Although your medical reports do indicate that you may be undergoing some degenerative disc changes, there is no herniation, no neural compression, or any indication that you are suffering from radiculopathy or sciatica.
> 2. There is no indication that these mild results prevent you from performing your own sedentary occupation 20-24 hours a week.
> 3. You have not provided any reports from any physician interpreting testing results, that determine you are unable to work.
> 4. The medical literature you provided describes various back conditions, and is not specific to your condition or the ability to perform your occupation.
> 5. Your letter describing your symptoms does not change our claim decision, as we have not been provided with medical evidence to support your inability to perform your occupation.
>
> It is our determination that, based on the definition of Total Disability as provided in the policy and documents contained in your file taken as a whole, we are upholding our decision to deny your eligibility for LTD Income Benefits.

Defendant's September 7, 2000 letter again informed Plaintiff of her right under ERISA to administratively appeal the decision. By a letter dated October 31, 2000, Plaintiff's counsel appealed the denial decision, noting that Plaintiff had qualified for Social Security disability payments and forwarding a Disability Questionnaire completed by Steven B. Wilkinson, M.D., Neurosurgery, dated October 23, 2000, but providing no additional clinical evidence supporting Plaintiff's claimed disability. During the course of this appeal, Defendant forwarded Plaintiff's medical records to the Medical Advisory Group, LLC, for a review of Plaintiff's sedentary part-time work functionality.

The letter received from Peter Sevior, M.D., the reviewing physician with Medical Advisory Group, LLC, noted that:

> [Plaintiff's] chart dates back to 1997 at which time she complained of

7

musculoskeletal pain. A series of investigations led to a diagnosis of L5-S1 disk protrusion for which she had a hemilaminectomy in February 1998. Since that time, notes reveal that she complained of muscle aches predominantly of her neck and back.

[Plaintiff] was seen by several physicians, and the question of fibromyalgia versus chronic fatigue syndrome was raised by Dr. Applebaum in December 1999. She was placed on Effexor at that point and referred to Dr. Allen [a neurologist] for a second opinion and further testing which returned as unremarkable. She has had physical therapy on several occasions and been started on an exercise program from which she apparently received some benefit. [Treating physician] Dr. Shinn's notes reflect his reluctance to define her as unable to work as he noted that "she doesn't seem to be too motivated to do much for her treatment at this point."

Dr. Sevior also spoke with Dr. Shinn, and Dr. Sevior reported that Dr. Shinn did not consider Plaintiff permanently impaired and felt there was no evidence to suggest that she was unable to perform her sedentary occupation. Dr. Wilkerson, who had signed the Disability Questionnaire on October 23, 2000, reportedly did not return Dr. Sevior's phone calls.

Dr. Sevior concluded his report by stating:

Having reviewed the medical record and spoken with [Plaintiff's] treating physician, it is my opinion that she has the physical capacity to perform the duties of a sedentary occupation. Specifically, I feel she has been able to work her part-time hours in her sedentary job from December 17, 1999 to the present.

On or about February 13, 2001, Defendant advised Plaintiff's counsel that it had affirmed its denial of LTD benefits because the information contained in the administrative record does not support a conclusion of "Total Disability" as required by the terms of the Policy, and further advised that Defendant was closing its file on the matter. Plaintiff filed the present lawsuit in the Circuit Court of Clay County, Missouri on November 18, 2004. (Doc. #1, Attach. #1). Defendant removed the suit to this Court on December 28, 2004. (Doc. #1).

**II.     Legal Standards**

8

*A. Summary Judgment*

The Defendant filed this Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. According to this Rule, summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering this Motion, the Court views all facts in the light most favorable to Plaintiff and gives her the benefit of all reasonable inferences. *See* Prudential Ins. Co. v. Hinkel, 121 F.3d 364, 366 (8th Cir. 1997). The Court will not weigh the credibility of the evidence, but rather will focus on whether a genuine issue of material fact exists. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979); United States v. Porter, 581 F.2d 698, 703 (8th Cir. 1978).

Summary judgment in favor of a defending party is appropriate where the defendant shows:

> (1) facts negating any of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) facts necessary to support the movant's properly pleaded affirmative defense.

Webb v. Reisel, 858 S.W.2d 767, 768 (Mo. Ct. App. 1993).

The summary judgment rule is intended "to isolate and dispose of factually unsupported claims" and should be applied to accomplish this purpose. Prudential Ins. Co., 121 F.3d at 366. In the interest of promoting judicial economy, summary judgment should be granted to prevent the trial of cases lacking a genuine issue of material fact. Inland Oil and Transp. Co. v. U.S., 600 F.2d 725, 728 (8th Cir. 1979).

*B. Denial of Benefits Pursuant to ERISA*

When an ERISA-governed employee welfare benefit plan gives the administrator discretionary

9

authority to determine eligibility for benefits or to construe the terms of the plan, federal courts may only review the decisions of such plan administrators for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Solger v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 144 F.3d 567, 568 (8th Cir. 1998). Courts must uphold the decision of a plan administrator if that decision was supported by substantial evidence. McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 1994). "Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion." Id. If a court finds that substantial evidence supports the administrator's decision, the decision should not be disturbed even if a different, reasonable interpretation could have been made. Id. When evaluating whether a denial of benefits was an abuse of discretion, courts are only to consider the information that was before the plan administrator at the time he or she made the determination to deny benefits. Sahulka v. Lucet Technologies, 206 F.3d 763, 769 (8th Cir. 1997). "The purpose of this caveat is to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators." Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997).

Plaintiff urges this Court to use the following factors, articulated in Finley v. Special Agents Mut. Benefit Ass'n, 957 F.2d 617, 621 (8th Cir. 1992), to assess the reasonableness of the Defendant's decision to deny Plaintiff LTD benefits: (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

The Finley factors serve to guide the courts' analysis of whether an administrator's *interpretation of uncertain terms* in a plan is reasonable. King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005). (emphasis added). Thus, the Finley factors only apply to the reasonableness of the Defendant's interpretation of any uncertain terms in the Policy. The Finley factors are not instructive where, as here, the plaintiff does not dispute the defendant's interpretation of the Plan. *See* Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 777 (8th Cir. 1998). Plaintiff does not argue that Defendant incorrectly interpreted the word "disabled" or any other term in the Policy. Plaintiff simply disagrees with Defendant's assessment of Plaintiff's medical records in making the factual determination that Plaintiff is not disabled from performing a sedentary part-time position. Therefore, this Court will not apply the Finley factors to the Defendant's fact-based disability determination. Rather, this Court will evaluate whether the Defendant's decision to deny LTD benefits to the Plaintiff was based on substantial evidence.

**III.    Analysis**

As a preliminary matter, the Court notes that the parties agree on all of the facts set forth above. (Doc. #27). Because the parties do not dispute any of the facts, no genuine issue of material fact exists to preclude summary judgment and the only remaining question is whether, on these facts, the Defendant is entitled to judgment as a matter of law. In this case, Plaintiff puts forth two theories in support of her argument that Defendant is not entitled to summary judgment. First, Plaintiff contends that the Defendant abused its discretion by not according special weight to the SSA's disability finding. (Doc. #27). Second, Plaintiff argues that Defendant abused its discretion by failing to give adequate weight to the Disability Questionnaire provided by Dr. Wilkerson, Plaintiff's neurosurgeon. Id. This Court rejects both of

11

Plaintiff's arguments and finds that Defendant's decision to deny Plaintiff LTD benefits was based on substantial evidence in the record.

Plaintiff argues that, because the SSA's disability standards are more stringent than Defendant's[4], the Defendant should have given greater weight to the SSA's determination that Plaintiff was disabled. (Doc. #27). However, ERISA plans are not bound by SSA determinations. Ciulla v. Usable Life, 864 F.Supp. 883, 888 (W.D. Ark. 1994). The SSA's disability determination does not require the ERISA plan administrator to reach the same conclusion. *See* Coker v. Metropolitan Life Ins. Co., 281 F.3d 793, 798 (8th Cir. 2002); *See also* Delta Family-Care Disability & Survivorship Plan v. Marshall, 258 F.3d 834, 842 n.11 (8th Cir. 2001) (noting that if a governmental award of disability benefits controlled the question of whether an ERISA plan should provide disability benefits, "a governmental agency would effectively strip the plan administrator of his discretion granted by the language of the benefit plan.")

Indeed, even the Plaintiff admits that plan administrators are not bound by a finding of disability from the SSA, and that the SSA finding is one factor among many that the administrator may consider when granting or denying LTD benefits. (Doc. #27, *quoting* Marshall v. Connecticut General Life Ins. Co., 2005 WL 1463472 at *10 (E.D. P.A. Jun. 17, 2005)). However, despite Plaintiff's acknowledgement that SSA disability determinations are merely one factor to be considered by plan administrators, Plaintiff contends that because the Defendant's disability standards are less stringent than the Social Security Act,

---

[4]Section 404.1505 of the Social Security Act, in relevant part, defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Thus, the Social Security Act's definition requires that the applicant be unable to do any substantial gainful activity, while Defendant's definition requires that the applicant be unable to perform the essential duties of his or her occupation.

12

the SSA's disability determination must be given greater weight and is evidence of an abuse of discretion. Plaintiff offers absolutely no support for this proposition.

In this case, Defendant reached its decision to deny Plaintiff's application for LTD benefits based on substantial evidence in the record. Defendant engaged in a thorough, extensive investigation before reaching the conclusion that Plaintiff was not disabled under the Policy. As part of its review of Plaintiff's claim for LTD benefits, Defendant gathered medical records from all of the health care practitioners–six in total–who Plaintiff had identified in her application for LTD benefits. Defendant then enlisted the assistance of Dr. Sevior of the Medical Advisory Group, LLC, to evaluate Plaintiff's claim. None of these doctors' assessments of the Plaintiff indicated that she was disabled from performing her sedentary occupation 20-24 hours per week. Further, although Defendant invited Plaintiff to provide any documentation that would assist the Defendant in evaluating her claim, Plaintiff did not submit any ancillary documentation regarding the basis for the SSA's determination of disability.[5]

At the time the Defendant denied Plaintiff's application for LTD benefits, it had substantial evidence to support its determination that the Plaintiff was not entitled to LTD benefits. Because plan administrators are not bound by SSA determinations, and because Defendant's determination was based on substantial evidence, Defendant did not, as a matter of law, abuse its discretion by declining to adopt the SSA's finding.

Plaintiff also argues that Defendant abused its discretion by failing to give adequate weight to the

---

[5]Plaintiff asserts that she did not submit ancillary documentation because the Policy did not require her to do so. While the Policy does not mandate the submission of ancillary documentation, neither does it prohibit the submission of such documentation. The Defendant simply invited the Plaintiff to submit *any* documentation to assist the Defendant in evaluating Plaintiff's claim.

13

Disability Questionnaire provided by Dr. Wilkerson, who Plaintiff alleges is "her neurosurgeon." (Doc. #27). Plaintiff claims that, following Defendant's invitation to submit additional information, in particular clinical evidence to support that she was limited from performing sedentary work on a 24-hour work week schedule, Plaintiff submitted a Disability Questionnaire dated October 23, 2000 by Dr. Wilkerson. Id. Plaintiff states that this Questionnaire established that Plaintiff was unable to perform her sedentary occupation. Id. Plaintiff also alleges that this evidence was summarily ignored because Dr. Sevior was unable to reach Dr. Wilkerson by phone, and that "ignoring this evidence because a phone call or phone calls were not returned is an abuse of discretion." Id.

Even if Plaintiff considers Dr. Wilkerson to be her treating physician[6], ERISA does not require plan administrators to automatically accord special weight to the opinions of a claimant's physician. *See* Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Plan administrators may credit reliable evidence that conflicts with a treating physician's evaluation. *See* Id. "Where there is a conflict of opinion, the plan administrator does not abuse his discretion in finding that the employee is not disabled." Clapp v. Citibank, N.A. Disability Plan (501), 262 F.3d 820, 829 (8th Cir. 2001), *quoting* Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996).

Faced with conflicting evidence in the record, the plan administrator in this case was apparently persuaded by what he or she perceived as the greater weight of the evidence. In this case, Defendant

---

[6]Though Plaintiff now refers to Dr. Wilkerson as "her neurosurgeon" (Doc. #27), Plaintiff did not identify Dr. Wilkerson as a treating physician on the application for LTD benefits she submitted in May 2000. (Doc. #28). Plaintiff did not submit any medical records to Defendant regarding how long she had been seeing Dr. Wilkerson, the results of any tests ordered by Dr. Wilkerson, or any course of treatment prescribed by Dr. Wilkerson. Id.

14

credited the medical evidence contained in the records received from Plaintiff's other treating physicians, neurologists, and neurosurgeon, and this Court must afford deference to the administrator's weighing of the evidence. The Defendant was under no obligation to afford special weight to Dr. Wilkerson's opinion that Plaintiff was disabled from performing her occupation. Rather, the fact that Defendant chose to credit the evidence submitted by Drs. Calhoun, Applebaum, Shinn, Allen, Beatty, and Katta over the testimony of Dr. Wilkerson does not constitute an abuse of discretion. The Defendant's conclusion that Plaintiff was physically able to perform her sedentary occupation on a 24-hour work week schedule was based on substantial evidence in the record, and Defendant did not abuse its discretion by not according special weight to Dr. Wilkerson.

## CONCLUSION

Defendant had substantial evidence in the record to support its determination that the Plaintiff was not entitled to LTD benefits. Because plan administrators are not bound by SSA determinations, the Defendant did not abuse its discretion by declining to adopt the SSA's finding of disability. Further, because Defendant is entitled to credit the medical evidence submitted by Plaintiff's other physicians, Defendant did not abuse its discretion by not according special weight to Dr. Wilkerson. The Defendant's conclusion that Plaintiff was physically able to perform her sedentary occupation on a 24-hour work week schedule was based on substantial evidence in the record. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED**.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: November 2, 2005